**Carl E. THORSON, Appellant,**

v.

**INLAND NAVIGATION COMPANY, a Corporation, Appellee (Archer-Daniels-Midland Co., Third Party Appellee).**

**No. 16255.**

United States Court of Appeals
Ninth Circuit.

Sept. 9, 1959.

Rehearing Denied Oct. 9, 1959.

Ben Anderson, Anderson & Franklin, Portland, Or., for appellant.

Mautz, Souther, Spaulding, Denecke & Kinsey, Arno H. Denecke, Portland, Or., for Inland Nav. Co.

Gray & Lister, Wendell Gray, Portland, Or., Nathan J. Heath, Portland, Or., for Archer-Daniels-Midland Co.

Before ORR and POPE, Circuit Judges, and YANKWICH, District Judge.

POPE, Circuit Judge.

The appellant, libelant below, was a longshoreman who received injuries aboard the appellee's barge while he was engaged in unloading bulk grain from the hold while the barge was lying in the navigable waters of the Columbia River at the Port of Vancouver. Appellant was employed by Archer-Daniels-Midland Co., a stevedoring firm doing the unloading.

Appellant was in No. 1 hatch of the barge when he was injured by being struck on the head and shoulders by a metal baker flag which fell into the hatch. This was a red flag which the barge was required to carry, as it carried petroleum on its up-river trips. It was made of sheet metal, 24 inches long, and from 12 to 16 inches wide, and weighed 25 pounds. The flag was welded on a stem made of a 1¼ inch iron pipe, which stem was about a foot long. It was mounted at the bow of the barge. There the stem was held in place by slipping it loose into the top of a larger, upright pipe which was welded to the deck. Thus it could be lifted out of this larger pipe, and it was free to swing about on this pivot.

The grain, which the barge hauled on its down-river trips, was unloaded by flexible suction hoses which extended into the hold. These hoses were lowered into the various holds by mechanical hoists, but the longshoremen handled them when they were being put in place, or being hoisted out of the hold. The hose was in process of being hoisted out when the flag fell on appellant. No. 1 hatch, where he was hit, was about 8 feet from the location of the flag and its socket. No witness testified that he saw how the flag was thrown from its socket; but the evidence did disclose that the lines of the stevedore's gear used for lowering or raising the hoses hung freely in the area of the baker flag. It was testified that as the boom was lifted to take out the suction hose, the hanging lines would be raised.

The trial court made no finding as to whether in this process these lines caught on the flag and lifted it out for after finding that the baker flag was recognized gear on such barges, and that it was impossible for the flag to become disengaged through its own action,—that "it would have to have been manually withdrawn or cast by a person or some line would have to become fouled with the flag which caused it to be yanked from its socket," the court concluded its findings as follows: "The lines and gear of the stevedore hung freely in the area of the baker flag and these lines and gear were not part of the barge's gear." From this the court concluded that the barge was not unseaworthy and that neither the barge nor her crew were negligent.

■ Clearly the court was of the view that having noted that these lines and gear "were not part of the barge's gear" the question of the barge owner's liability for unseaworthiness was conclusively negatived. But the case of Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 427, 79 S.Ct. 445, 3 L.Ed.2d 413, decided February 24, 1959, since the decision of this case, calls attention to the fact that not only is the shipowner liable to a longshoreman for injuries due to the ship's unseaworthiness, Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, but the owner's absolute duty in this regard extends to those aspects of unseaworthiness which are brought about by acts of a stevedore company or its servants. Said the court in Crumady [358 U.S. 423, 79 S.Ct. 447]: "The shipowner is not relieved of these responsibilities by turning control of the loading or unloading of the ship over to a stevedore company. It was held in Grillea v. United States, 2 Cir., 232 F.2d 919, that stevedores themselves could render a ship *pro tanto* unseaworthy and make the vessel owner liable for injuries to one of them. And see Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120; Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798."

The case before us is most nearly like that of Alaska Steamship Co. v. Petterson, supra. There it was assumed that the block which broke and caused the injuries was brought on board by the stevedoring company (205 F.2d 478, at page 479). There, too, the trial court, as in this case, found no liability "on the ground that it was not shown that the block belonged to or was a part of the gear of the [ship]."

But this court reversed, noting that it was a case of "strict liability regardless of fault" and saying "it is a logical inference that it (the block) would not have broken unless it was defective—that is, unless it was unseaworthy."

Here, as the court found, the flag could not "become disengaged through its own action * * * some line would have to have become fouled with the flag." It was not manually withdrawn, or cast by any person. It did come out and fall. An inference that the hanging lines caught it and threw it out would appear to be permissible, were the trial court to go into that question.[1] Should the court, on further hearing, draw that inference, and conclude that the hanging lines presented a possibility of fouling with the flag, the conclusion of unseaworthiness would be unavoidable.

In one respect this case presents a stronger one for charging the owners with unseaworthiness than was present in the Petterson case, supra. For here the unseaworthiness, if it existed, was the result of the combination of the owner's loosely placed flag with the near-hanging lines attached to the boom. The flag portion of the hazard belonged to the owners. The unseaworthiness arose as much from leaving the flag in the socket near the ropes as from allowing the ropes to hang there.[2]

The judgment is reversed and the cause is remanded to the district court for further consideration and findings in the light of the Crumady case, supra, and of this opinion.

1. Compare the permissible inference as to the cause of petitioner's contamination with polio, noted in McAllister v. United States, 348 U.S. 19, 22, 75 S.Ct. 6, 99 L.Ed. 20.

2. That aspect of the case would be significant even if the flag were thrown out by the mooring line of another ship, which appears to have been laid across the barge.