MARY LOU BURNS, APPELLANT, V. PHILIP S. METZ, M.D.,
APPELLEE.
513 N.W.2d 505

Filed March 25, 1994.   No. S-92-482.

James R. Welsh, of Bradford, Coenen, Ashford & Welsh, for
appellant.

James A. Snowden, of Knudsen, Berkheimer, Richardson &
Endacott, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

HASTINGS, C.J.

Plaintiff, Mary Lou Burns, brought this action for professional negligence arising from breast reduction surgery performed by defendant-appellee Philip S. Metz, M.D., and his assistant, defendant Richard M. Pitsch, Jr., M.D. Plaintiff assigns as error the failure of the trial court to instruct the jury as to the definition of negligence and its failure to instruct that Dr. Metz was responsible for all negligent acts of his assistant.

To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *Wilson v. Misko*, 244 Neb. 526, .508 N.W.2d 238 (1993); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993).

Where a tendered instruction is not an incorrect statement of the law, but is also not wholly correct, the trial court, whether requested or not, has the duty of instructing the jury on issues presented by the pleadings and the evidence. *Wilson v. Misko, supra*; *Professional Recruiters v. Oliver*, 226 Neb. 16, 409 N.W.2d 304 (1987).

Because of physical discomfort in her neck and shoulder area due to her large breasts, Burns, after an examination and recommendation by Dr. Metz, consented to breast reduction surgery which was accomplished on Friday, September 18, 1987. Dr. Metz had described for her how the reduction would be accomplished, informed her of possible complications, and told her that he always had a surgeon assisting him during any major surgery. Dr. Metz' office manager informed her that Dr. Rick Windle would be assisting with the surgery. Burns was familiar with Dr. Windle and "had no problems with him being in [the operating room] assisting at all."

On the following Sunday, Burns had a chance to observe her breasts during a dressing change. She noticed that her breasts were asymmetrical and that the sutures on the right breast were

very small and even, while on the left breast the sutures were not as evenly spaced and there were areas where pieces of skin and tissue were "puckering out a little bit."

Prior to Burns' next appointment, she received the operative and pathology reports in the mail, attached to an insurance form. After reading the reports, Burns concluded that two different surgeons had performed surgery on her and that this was the reason one breast was so much smaller than the other. The second surgeon was Dr. Pitsch. Burns saw in the report that 186 more grams of tissue were taken from the right breast than the left. She stated that she felt she had been deceived because she had not been told that the other surgeon would do anything but assist. The surgical report stated that "Dr. Pitsch had removed the left and right segments" on the right breast and that he had closed on the left breast, while Dr. Metz closed on the right.

Dr. Simon Fredricks testified by deposition as an expert for Burns. He testified that Dr. Pitsch, the assisting surgeon, departed from the appropriate standard of care by failing to object to Dr. Metz' request to resect the breast tissue. However, he also stated that even if Dr. Pitsch had objected, if Dr. Metz had insisted that he do so, Dr. Pitsch should have done what was requested of him. Dr. Fredricks further testified on cross-examination that if Dr. Metz directly supervised Dr. Pitsch in resecting the medial and lateral portions of the breast, then both Drs. Metz and Pitsch had met the standard of care in regard to that issue. He added that as the assistant, Dr. Pitsch was under obligation to do everything he was requested to do by Dr. Metz.

Dr. Fredricks stated that Dr. Metz had departed from the standard of care by failing to obtain informed consent, by failing to inform Burns that he intended to permit the assisting surgeon to sculpture breast tissue, by failing to take preoperative photographs to aid him during the surgery, by failing to be personally responsible for sculpturing both breasts, and by failing to evaluate the breasts in the erect position during surgery.

However, Drs. William LeWorthy and Colleen Stice both testified that Dr. Metz followed the standard of care in his

treatment of Burns. Although he agreed that there was asymmetry, Dr. Metz stated that he had complied with the appropriate standard of care. Both Drs. Fredricks and Metz testified that asymmetry may occur despite the exercise of reasonable care.

At the close of Burns' case, Dr. Pitsch moved for a directed verdict. The court sustained the motion and dismissed Dr. Pitsch as a party defendant. Dr. Metz' motion for a directed verdict was overruled. Following completion of the testimony, the case was submitted to the jury on the issues of whether Dr. Metz was negligent in failing to do a proper preoperative workup, in failing to inform Burns that Dr. Pitsch would be removing tissue from her right breast, and in failing to properly remove tissue from her right breast. The jury returned a verdict in favor of Dr. Metz. Burns appeals to this court.

Burns first asserts that the court erred in failing to give her proposed instruction defining negligence.

Malpractice or professional negligence is defined under the Nebraska Hospital-Medical Liability Act in Neb. Rev. Stat. § 44-2810 (Reissue 1988) as follows:

> Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities. In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a health care provider in a particular community, the test shall be that which health care providers, in the same community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances.

Burns' proposed instruction No. 10, based on the NJI2d Civ. 3.02 definition of ordinary negligence, stated: "Negligence is doing something that a reasonably careful person would not do under similar circumstances, or failing to do something that a reasonably careful person would do under similar circumstances."

The trial court refused this instruction, stating that its instruction No. 7 "adequately instructs the jury in this case on that issue." The court's instruction No. 7 stated:

This is an action based on a claim of malpractice, sometimes called professional negligence.

A plastic surgeon such as the defendant has the duty to possess and use the care, skill and knowledge ordinarily possessed and used under like circumstances by other plastic surgeons engaged in a similar practice in the same or similar communities.

The second paragraph of this instruction is taken virtually verbatim from NJI2d Civ. 12.01, which sets out the "duty of a health care provider." However, Burns objects to the first paragraph of the court's instruction, contending that it indicates to the jury that she would have a stronger burden of proof than ordinary negligence. On the contrary, *professional* negligence does not merely require that the rendered care be judged by what a reasonably careful person would do or not do under similar circumstances, but, rather, requires that the professional's actions be measured by the care, skill, and knowledge ordinarily possessed and used by other comparable *professionals* in a similar practice. It is Dr. Metz who must measure up to the higher standard of care.

The Nebraska Jury Instruction does not use the phrase "reasonable care," as does the definition provided in § 44-2810. However, as noted in NJI2d Civ. 12.01 comment at 688, " 'the care, skill, and knowledge ordinarily possessed and used under like circumstances by other [such health care providers] engaged in a similar practice in the same or similar localities' *will* be reasonable care." (Emphasis supplied.) Thus, the definition of "reasonable care" is inherent in the Nebraska Jury Instruction, and an additional instruction relating negligence to the absence of reasonable care would be redundant and possibly confusing to the jury.

Although Burns further argues that the case was tried in "negligence" and that there is no rationale for the court's failure to instruct on this key word, this is clearly an action in professional negligence. As stated in *Kortus v. Jensen*, 195 Neb. 261, 268, 237 N.W.2d 845, 850 (1976):

[P]roof of medical negligence (malpractice) requires two basic evidentiary steps, followed by proof relating to proximate cause and damages: (1) Evidence of the generally accepted and recognized standard of care or skill of the medical community in the particular kind of care; and (2) a showing that the physician or surgeon in question negligently departed from that standard in his treatment of the plaintiff. The burden of establishing *both* these essential elements rests upon the plaintiff's introduction of expert medical testimony.

(Emphasis in original.) NJI2d Civ. 12.01 clearly addresses the standard necessary for a determination of medical negligence as set forth above.

The court's instruction as given could have been made more clear by explicitly stating that professional negligence means the *failure* to "possess and use the care, skill and knowledge ordinarily possessed and used under like circumstances." However, as we have often noted, all jury instructions must be read together and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover issues supported by pleadings and evidence, there is no prejudicial error necessitating reversal. See, *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992); *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992). As stated in *Carter v. Consolidated Cabs, Inc.*, 490 S.W.2d 39, 43 (Mo. 1973), " ' "Although we do not hold that in every case the giving of a negligence definition is required by MAI, it would appear to be a better practice to include such definition where the term 'negligence' appears in any of the instructions." ' "

Here, the jury was given instruction No. 3, which states, in pertinent part, that

[t]he plaintiff, Mary Lou Burns, claims that the defendant, Dr. Philip S. Metz, was negligent in one or more of the following ways in connection with his care and treatment of Mary Lou Burns:

1. In failing to do a proper preoperative workup to determine the state of asymmetry or nature of plaintiff's breasts.

2. In failing to inform plaintiff that Dr. Richard Pitsch

would be removing tissue from plaintiff's right breast.

3. In failing to properly remove tissue from plaintiff's right breast.

The plaintiff, in this action, claims that as a direct and proximate result of the negligence of the defendant, she sustained injury to her breasts.

The defendant denies that he was negligent in any manner.

. . . .

Before the plaintiff can recover against the defendant, the plaintiff must prove, by the greater weight of evidence, each and all of the following:

1. That the defendant was negligent in one or more of the ways claimed by the plaintiff;

2. That the negligence of the defendant was a proximate cause of the plaintiff's injury; and

3. The nature and extent of the plaintiff's damages.

Before the plaintiff can recover against the defendant on her claim of failure to obtain informed consent, the plaintiff must prove, by the greater weight of the evidence, each and all of the following:

1. That the defendant failed to obtain the plaintiff's informed consent before he operated on the plaintiff;

2. That under similar circumstances, a reasonably prudent plastic surgeon in this community or similar communities would have obtained express or implied consent for such an operation;

3. That a reasonably prudent person in the plaintiff's position would not have undergone the operation had she been properly informed;

4. That the lack of informed consent was the proximate cause of some damage to the plaintiff; and

5. The nature and extent of that damage.

Consent to a course of treatment is informed consent if it is based on information that would ordinarily be provided to a patient under like circumstances by a surgeon engaged in a similar practice in the same or similar localities.

The latter part of the instruction, beginning with "[b]efore the

plaintiff can recover," is the critical portion of the instructions and placed the proper burden upon Burns. The jury was also instructed on the definition of proximate cause.

Again, as to Dr. Metz' care and treatment of Burns, the first part of the above instruction fails to explicitly relate his actions to the appropriate standard of care. However, on the issue of informed consent, the latter part of the instruction does relate Dr. Metz' actions to the appropriate standard, as provided in instruction No. 7. The meaning of an instruction and not its phraseology is the important consideration. Where the meaning of an instruction is reasonably clear, it is not prejudicially erroneous. *Greenberg v. Bishop Clarkson Memorial Hospital*, 201 Neb. 215, 266 N.W.2d 902 (1978).

Taken as a whole, the instructions adequately convey to the jury that Dr. Metz would be professionally negligent in departing from the appropriate standard of care, as set out in instruction No. 7, in his treatment of Burns.

Burns next contends that the court erred in failing to give the following proposed instruction No. 9:

As the surgeon for the plaintiff, Philip Metz, M.D., is responsible for the total care of his patient, Mary Lou Burns. He may not relieve himself of his responsibility to his patients by delegating his duties to a general surgeon. The responsibility for the proper performance of a duty cannot be delegated, although actual performance of the task may be done by another. The law does not permit a physician to avoid liability by the act of attempting to transfer his responsibility to another.

You are instructed that, as a matter of law, the Court has found that Dr. Richard Pitsch was at all times during the course of the breast reduction surgery to the plaintiff on September 18, 1987, under the exclusive control and supervision of the defendant, Philip Metz, M.D., and that any negligence you may find against Dr. Richard Pitsch must be considered by you to be the negligence of the defendant, Philip Metz, M.D.

During the instruction conference, counsel for Burns argued that this instruction was necessary to advise the jury that Dr. Pitsch had been dismissed because Dr. Metz had exclusive

control and supervision of Dr. Pitsch. Dr. Metz argues that this instruction would have permitted the jury to find that Dr. Pitsch was negligent despite the fact that in dismissing Dr. Pitsch, the court ruled as a matter of law that insufficient evidence of Dr. Pitsch's negligence had been presented. In sustaining Dr. Pitsch's motion for a directed verdict, the court stated:

> I think that [Dr. Pitsch's counsel's] argument is accurate as to what the evidence is, and as to the law that applies, and certainly the testimony of Dr. Metz here this morning filled in whatever gaps there might have been as to Dr. Pitsch's conduct. Performance of the surgery was under the supervision and control of Dr. Metz. Dr. Metz is dismissed as — Dr. Pitsch is dismissed as a party defendant.

Although these comments reflect the court's consideration of the fact that Dr. Pitsch was under the exclusive control and supervision of Dr. Metz, it was proper to dismiss Dr. Pitsch as a defendant on the basis that the evidence offered by Burns was not sufficient to make out a prima facie case against him. As noted above, in a medical malpractice action, the plaintiff has the burden of establishing by expert medical testimony (1) the generally accepted and recognized standard of care or skill of the medical community in the particular kind of care; and (2) that the physician or surgeon in question negligently departed from that standard in his treatment of the plaintiff. The only evidence offered in this regard was the deposition testimony of Dr. Simon Fredricks. In regard to Dr. Pitsch's responsibilities, Dr. Fredricks testified:

> Q. I believe you also indicated that, under the direct supervision of Dr. Metz, he [Dr. Pitsch] could remove tissue?
>
> A. Absolutely. I think that, if he acted as an extension of Dr. Metz's arm and was an extension of the scalpel of the surgeon of record, the surgeon of record remained in verbal and visual continuity and directed him in what he wanted him to excise and sculpture, then he had — then that would be the proper and appropriate thing for an assistant to do.

Q. I'll represent to you, Doctor, that Dr. Pitsch had assisted Dr. Metz prior to Ms. Burns' surgery and in the same manner. And I believe he testified to that in his deposition. You have read his deposition; right?

A. Yes, I have. I haven't read it recently, but I have read it.

Q. You had read it before you gave your prior deposition; correct?

A. I did, sir.

. . . .

Q. And, at that time, do you recall testifying that you didn't have any problem with Dr. Pitsch's care of Ms. Burns?

A. That is correct.

Q. The same would be true today?

A. Yes, sir.

Q. You indicated at that time that Dr. Pitsch was simply doing what he was asked by the surgeon of record?

A. That is correct.

Q. And I believe you also indicated that at that time the final result is the responsibility of the surgeon of record, not the assistant?

A. Without question. Absolutely.

Dr. Fredricks also stated that Dr. Pitsch would not have the responsibility to perform the procedure such that upon completion the breasts would be symmetrical, nor was it Dr. Pitsch's responsibility to explain the risks and alternatives of the procedure to the patient.

Dr. Metz was asked:

Q. Do you have the responsibility of controlling and supervising what Dr. Pitsch does in the surgical suite as far as removing tissue from Mrs. Burns' right breast?

A. I controlled and supervised it, yes.

Q. Did Dr. Pitsch have any discretion as to how much tissue he should or should not carve out of Mrs. Burns' right breast?

A. No, he was told what to cut out.

Q. And whatever he cuts out and whatever he did cut out on September 18, 1987, was done pursuant to your

control, supervision and command?

A. Yes.

Burns cited *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991), as authority for her proposed instruction. However, in *Swierczek*, res ipsa loquitur was pled, raising the inference of negligence. We stated that "[t]he duty of care owed by a physician is nondelegable, which 'means that an employer of an independent contractor . . . by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties *negligently* performed.' " (Emphasis supplied.) *Id.* at 482, 466 N.W.2d at 520.

Here, there is nothing in the record to indicate that Dr. Pitsch departed from the appropriate standard of care in regard to his responsibilities as an assisting surgeon. A litigant is entitled to have the jury instructed only upon those theories of the case which are presented by the pleadings and which are supported by competent evidence. *Swartz v. Peterson*, 199 Neb. 171, 256 N.W.2d 681 (1977). Furthermore, we have held that unless the servant or agent is liable in negligence, there can be no liability on the master or principal. *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991). Thus, in the absence of evidence of any negligence by Dr. Pitsch, the court properly refused Burns' proposed instruction which would have allowed the jury to consider any negligence of Dr. Pitsch, which evidence did not exist in determining the negligence of Dr. Metz.

Finding no prejudicial error having been committed by the district court, we affirm its judgment.

AFFIRMED.

WHITE, J., concurs in the result.