MICHAEL R. BREEDEN AND CARILYN BREEDEN, HUSBAND AND WIFE, APPELLANTS AND CROSS-APPELLEES, V. ANESTHESIA WEST, P.C., ET AL., APPELLEES AND CROSS-APPELLANTS.

656 N.W.2d 913

Filed February 28, 2003.   No. S-01-774.

Daniel B. Cullan, Paul W. Madgett, and Diana J. Vogt, of Cullan & Cullan, for appellants.

David D. Ernst and Earl G. Greene III, of Gaines, Pansing & Hogan, for appellees Wesley K. Hubka and Janet Lemonds.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

Michael R. Breeden and Carilyn Breeden sued appellees Anesthesia West, P.C., and its employees Dr. Wesley K. Hubka, an anesthesiologist, and Janet Lemonds, a nurse anesthetist, for medical malpractice. (Appellees are referred to collectively herein as "Anesthesia West.") The Breedens alleged that Michael Breeden (hereinafter Breeden) suffered brain damage as a result of Dr. Hubka's and Lemonds' negligence in administering general anesthesia during Breeden's gallbladder removal surgery. The Breedens appeal a jury verdict in favor of Anesthesia West.

## II. FACTUAL BACKGROUND

Breeden was admitted to Methodist Hospital in Omaha, Nebraska, on August 14, 1994, to have his gallbladder surgically removed. During the evening of August 15, Dr. Doug Rennels, an anesthesiologist, conducted a preanesthetic evaluation of Breeden. Such examination disclosed, inter alia, no evidence of "peripheral neurological deficits."

During the morning of August 16, Nurse Joyce Clark, an employee of Methodist Hospital, again evaluated Breeden's condition. As a result of this evaluation, Clark made an entry in Breeden's electronic file on Methodist Hospital's computer system that Breeden was experiencing "TINGLING OF RT LEG, RT SIDE OF BODY TO MID CHEST." The entry reflected that Clark observed the symptom at 9:50 a.m.

At approximately 10:35 a.m., Breeden was taken to the preoperation holding area in order to receive general anesthesia. There, Breeden's condition was again evaluated, this time by Dr. Hubka, after which Dr. Hubka and Lemonds administered general anesthesia to Breeden. Although, according to Dr. Hubka, there were "at least three" computers in the preoperation holding area on which the nursing notes in Breeden's electronic file could have been accessed, neither Dr. Hubka nor Lemonds accessed Breeden's electronic file to read Clark's entry prior to administering anesthesia. Breeden's anesthesia was monitored throughout the surgery by Dr. Hubka and Lemonds.

The Breedens filed a medical malpractice action against Anesthesia West, alleging that Dr. Hubka and Lemonds were

negligent in administering general anesthesia and that as a result, Breeden suffered brain damage. In their operative petition, the Breedens alleged, inter alia, that Dr. Hubka and Lemonds breached their duty to "[e]nsure that [Breeden's] surgery was postponed" based on the information in Clark's note.

During two pretrial depositions, Clark gave conflicting testimony regarding the time she actually entered the note regarding Breeden's "tingling" symptom into the Methodist Hospital computer system. Clark testified in her first deposition that she entered the note at 9:50 a.m. on August 16. However, in her second deposition, Clark testified she may have entered the note later in the day, after Breeden's surgery.

Prior to trial, the district court ruled, over Anesthesia West's objection, that pursuant to *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981), Clark's "earlier deposition which indicates that the entry was made at a time on or before the day of surgery or the specific words of her own testimony will be the testimony at trial as a matter of law." Such determination was ultimately incorporated into jury instruction No. 5, which provided that "[t]he Court has determined as a matter of law that the following fact exists and you must accept it as true: Nurse Joyce Clark entered her nursing note on the computer at 9:50 a.m. on August 16, 1994."

At trial, the Breedens' expert, Dr. Richard Fields, opined that Clark's note indicating Breeden complained of "tingling" in his right side and right leg might have reflected a transient ischemic attack, or "TIA," a condition during which the brain receives insufficient oxygen. Dr. Fields opined that administering general anesthesia to a patient suffering a TIA "puts [the patient] at extreme risk of producing a permanent bad result or aggravating — extending the problems that he has."

Dr. Hubka agreed that if Breeden was suffering from a TIA prior to surgery, his anesthesia should have been postponed. Dr. Hubka asserted, however, that he acted within the prevailing standard of care by relying on Clark to verbally report to him if, in her view, the "tingling" symptom was significant. Dr. Hubka stated that "[n]urses will always call us and give us reports on significant findings that they've made." In Dr. Hubka's view, the fact that Clark did not verbally communicate to him concerns about the

"tingling" symptom suggested that Breeden probably was not suffering from a TIA prior to surgery. Similarly, Anesthesia West's expert, Dr. Myrna Newland, an anesthesiologist and member of the faculty at the University of Nebraska Medical Center, opined that Dr. Hubka acted within the prevailing standard of care by relying on nurses to verbally report "significant" symptoms to him. Dr. Newland stated that in her practice, "we depend on the preoperative nurse and the nurse taking care of the patient to communicate any significant change that should be brought to our attention."

The jury returned a verdict in favor of Anesthesia West and against the Breedens. The Breedens moved for a new trial, which was overruled by the district court. The Breedens appealed. We moved the case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

### III. ASSIGNMENTS OF ERROR

The Breedens assign, rephrased, that the district court erred in (1) "fail[ing] to give Instruction No. 12A [which provided] that the duties of an anesthesiologist [are] nondelegable"; (2) giving jury instruction No. 9 regarding the applicable standard of care because it "violated Due Process, misstated the law, was misleading, and was not supported by the evidence"; (3) "fail[ing] to modify Instruction 9. to correctly state the law"; (4) failing to grant the Breedens' motion for a mistrial; and (5) denying the Breedens' motion for a new trial.

### IV. CROSS-APPEAL

Anesthesia West assigns on cross-appeal that the district court erred (1) "[w]hen it ruled as a matter of law that the inconsistent, nonparty witness statement made by Clark constituted changed testimony for the exigencies of trial pursuant to *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981)," and (2) "[b]y the giving of Jury Instruction No. 5 because the court gave the instruction based on its erroneous application of *Momsen* to the testimony of the witness Joyce Clark."

### V. STANDARD OF REVIEW

Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Fu v.*

*State*, 263 Neb. 848, 643 N.W.2d 659 (2002); *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000).

To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Malone v. American Bus. Info.*, 264 Neb. 127, 647 N.W.2d 569 (2002); *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002).

Whether the jury instructions given by a trial court are correct is a question of law. *Malone, supra; Springer, supra.* When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Smith v. Fire Ins. Exch. of Los Angeles*, 261 Neb. 857, 626 N.W.2d 534 (2001); *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001).

## VI. ANALYSIS

### 1. JURY INSTRUCTION NO. 12A

The Breedens first assign that the district court erred by refusing to give the Breedens' tendered jury instruction No. 12A. Instruction No. 12A provided:

> The duty to read the nursing notes from the period immediately after the Pre-Anesthesia Evaluation through the period immediately before surgery is a duty owed by the anesthesiologists. It is a nondelegable duty. That means the anesthesiologist by assigning to another the duty to read such nursing notes is not relieve[d] from liability arising from the delegated duties if they are negligently performed.
>
> Since the duty to read such nursing notes is a nondelega[ble] duty, the responsibility and ultimate liability for the proper performance of that duty cannot be delegated, although the actual performance of the task may be done by another.

To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law,

(2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Malone, supra*; *Springer, supra.*

### (a) Correct Statement of Law and Warranted by the Evidence

■ Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Fu, supra*; *Sharkey, supra.* This court has previously held that in certain circumstances, the ultimate responsibility for the performance of duties owed by a physician to his or her patient is nondelegable. *Hawkes v. Lewis*, 252 Neb. 178, 560 N.W.2d 844 (1997); *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994); *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991).

In *Hawkes, supra*, this court held that "the surgeon in charge" of performing an abdominal hysterectomy owed a nondelegable duty to his patient to properly " ' "pack away" ' " the patient's small intestine during the surgery so as to avoid damage to surrounding organs. 252 Neb. at 179, 181, 560 N.W.2d at 846-47. In *Swierczek, supra*, this court held that the " 'surgeon in charge' " while an operation was in progress had a nondelegable duty to ensure the safety of his patient while she was in the operating room having her teeth removed. 237 Neb. at 479, 466 N.W.2d at 518. See, also, *Burns v. Metz*, 245 Neb. 428, 513 N.W.2d 505 (1994) (noting that principal surgeon performing breast reduction surgery had nondelegable duty to properly close surgical incisions).

*Long, supra*, involved a surgeon who, in reliance on a radiologist's misinterpretation of a spinal x ray, operated on the wrong vertebrae of his patient's spine. In the ensuing medical malpractice action brought by the patient against the surgeon, the surgeon contended that he acted within the prevailing standard of care by relying on the radiologist's x-ray interpretation to localize the operative site of his patient.

This court found no merit in the surgeon's contention. We relied on our prior decisions in medical malpractice cases as authority for the rule that "a head surgeon is ultimately liable for the negligent acts or omissions of others who are assisting in the surgery." *Id.* at 555, 520 N.W.2d at 201. Accordingly, we held that

the ultimate responsibility for identifying the operative site of his patient could not be delegated by the surgeon to the radiologist.

The nondelegable duty rule evolved as an exception to the general rule that an employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984); *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981); Restatement (Second) of Torts § 409 (1965). See, also, *Kleeman v. Rheingold*, 81 N.Y.2d 270, 614 N.E.2d 712, 598 N.Y.S.2d 149 (1993); *Saiz v. Belen School Dist.*, 113 N.M. 387, 393, 827 P.2d 102, 108 (1992) (noting that "[t]he absence of a right of control over the manner in which the work is to be done is the most commonly accepted criterion for distinguishing independent contractors from employees whose negligence the employer is vicariously liable").

Whether a duty is nondelegable is a question of law. *Saiz, supra*; *Summers v. A.L. Gilbert Co.*, 69 Cal. App. 4th 1155, 82 Cal. Rptr. 2d 162 (1999). There is no set formula for determining when a duty is nondelegable. "Indeed, whether a particular duty is properly categorized as 'nondelegable' necessarily entails a *sui generis* inquiry, since the conclusion ultimately rests on policy considerations." *Kleeman*, 81 N.Y.2d at 275, 614 N.E.2d at 715, 598 N.Y.S.2d at 152. See, also, Restatement, *supra*, Introductory Note for §§ 416 to 429. As stated by the Michigan Supreme Court in *Funk v General Motors Corp*, 392 Mich. 91, 101-02, 220 N.W.2d 641, 645 (1974), *abrogated on other grounds, Hardy v Monsanto Enviro-Chem*, 414 Mich. 29, 323 N.W.2d 270 (1982), which was cited with approval in *Erickson, supra*:

> Inevitably it becomes a matter of judgment, case by case, where to draw the line between so-called "delegable" and "nondelegable" tasks and duties. In a given case, the policy question facing a court (the law of torts is largely judge-made) is whether on the facts presented the public interest warrants imposition upon a person who has delegated a task the duty to guard against risks implicit in the performance of the task.

Courts have often deemed a duty to be nondelegable when " 'the responsibility is so important to the community that the employer should not be permitted to transfer it to another.' "

*Feliberty v. Damon*, 72 N.Y.2d 112, 119, 527 N.E.2d 261, 264, 531 N.Y.S.2d 778, 781 (1988) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 71 (5th ed. 1984)). See, also, Restatement, *supra*, §§ 417 and 418; *Hammond v. The Nebraska Nat. Gas Co.*, 204 Neb. 80, 281 N.W.2d 520 (1979) (holding that duty natural gas utility owed to public to install safe natural gas pipelines was nondelegable).

The exception for nondelegable duties "requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted." Restatement, *supra*, Introductory Note for §§ 416 to 429 at 394. This court has explained that a nondelegable duty

> " 'means that an employer of an independent contractor . . . by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed. [Citation omitted.] As a result of a nondelegable duty, the responsibility or ultimate liability for proper performance of a duty cannot be delegated, although actual performance of the task required by a nondelegable duty may be done by another.' "

*Long v. Hacker*, 246 Neb. 547, 555, 520 N.W.2d 195, 201 (1994) (quoting *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991), and *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 376 N.W.2d 301 (1985)). Thus, the person owing a nondelegable duty "is not excused from taking the necessary precautions by contracting with or relying on others to take necessary precautionary measures." *Hickman v. Parks Construction Co.*, 162 Neb. 461, 470, 76 N.W.2d 403, 410 (1956).

While this court has previously determined that duties owed by the principal surgeon are nondelegable, it has not had occasion to determine whether duties owed by an anesthesiologist are nondelegable. However, the rationale behind nondelegable duties does not limit their application to principal surgeons, since the determination of whether a particular duty is nondelegable is a question of law which ultimately rests on policy considerations. *Kleeman v. Rheingold*, 81 N.Y.2d 270, 614 N.E.2d 712, 598 N.Y.S.2d 149 (1993); *Saiz v. Belen School Dist.*, 113 N.M. 387,

827 P.2d 102 (1992); *Summers v. A.L. Gilbert Co.*, 69 Cal. App. 4th 1155, 82 Cal. Rptr. 2d 162 (1999).

▇▇ This court has stated that the risk reasonably to be perceived defines the duty to be obeyed. *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999). The experts in this case would appear to agree that "significant" symptoms which put one's patient at risk should be known by the anesthesiologist prior to commencing anesthesia. The disagreement lies in the acceptable manner in which such information is made known to the anesthesiologist. Given the inherent risks of anesthesia, it is reasonable for a patient to assume that medical information significant to a determination of whether the patient can be safely anesthetized will be known by the anesthesiologist before the patient receives anesthesia. "Under established principles, the client's reasonable expectations and beliefs about who will render a particular service are a significant factor in identifying duties that should be deemed to be 'nondelegable.'" *Kleeman*, 81 N.Y.2d at 276, 614 N.E.2d at 716, 598 N.Y.S.2d at 153. Accord Restatement (Second) of Torts § 429 (1965).

▇▇ We therefore determine that because a patient can sustain severe injuries and even death if anesthesia is not administered properly, public interest warrants the imposition of a nondelegable duty upon an anesthesiologist to be aware of reasonably available medical information significant to the health of his or her patient prior to administering anesthesia. *Kleeman, supra*; *Feliberty v. Damon*, 72 N.Y.2d 112, 527 N.E.2d 261, 531 N.Y.S.2d 778 (1988); *Funk v General Motors Corp*, 392 Mich. 91, 220 N.W.2d 641 (1974), *abrogated on other grounds, Hardy v Monsanto Enviro-Chem*, 414 Mich. 29, 323 N.W.2d 270 (1982). Such duty is an integral part of the care the anesthesiologist delivers, and he or she should not be able to avoid the responsibility for the proper performance of such duty by delegating it to others.

▇▇ The appropriate standard of care in a medical malpractice action is a question of fact. See *Burns v. Metz*, 245 Neb. 428, 513 N.W.2d 505 (1994). If, on retrial, the standard of care is ultimately found to be one which delegates to others the responsibility for reporting to the anesthesiologist reasonably available medical information significant to the health of the patient, the anesthesiologist is not relieved from liability if the finder of fact

determines the delegated duties were performed negligently. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994).

Tendered jury instruction No. 12A is both a correct statement of the law and warranted by the evidence. In essence, the tendered instruction informed the jury that an anesthesiologist who delegates to others the responsibility for reporting to him or her reasonably available medical information significant to the health of the patient prior to the patient's undergoing anesthesia is not relieved from liability if the delegated responsibility is done negligently.

(b) Prejudice

The failure to give the Breedens' tendered jury instruction No. 12A was prejudicial. The jury was instructed, inter alia, that the Breedens claimed Anesthesia West, through its employees Dr. Hubka and Lemonds, breached the standard of care by "[f]ailing to read the nursing notes between the time that its employee, Douglas E. Rennels, M.D., performed the pre-anesthetic evaluation and that [sic] when Wesley K. Hubka, M.D. and Janet Lemonds performed their anesthetic duties." The jury was also instructed that "[t]he defendants further allege that the cause of plaintiffs' injuries and damages, if any, was something other than the alleged action or inaction of the defendants."

Anesthesia West asserted in closing argument that under the prevailing standard of care, neither Dr. Hubka nor Lemonds was required to be aware of the information in the nurses' notes unless such information was verbally brought to their attention. Anesthesia West's counsel argued, "Ladies and gentlemen, what is the standard of care? . . . The standard of care is to verbally pass along the information. . . . It's verbal communication. That's how it's done in this case. The plaintiff has not met the burden on standard of care."

In the absence of the Breedens' tendered instruction No. 12A, the jury was free to find that if the standard of care permitted Anesthesia West to delegate to others the responsibility of bringing to its attention reasonably available medical information significant to Breeden's health, Anesthesia West was relieved of liability even if the party to whom the responsibility was delegated performed that responsibility negligently. The district court's

failure to give the Breedens' tendered instruction No. 12A was prejudicial and necessitates reversal.

Having determined that the trial court's failure to give the Breedens' tendered instruction No. 12A requires reversal, we limit our consideration of the Breedens' remaining assignments of error to issues likely to arise again on retrial. See *Pleiss v. Barnes*, 260 Neb. 770, 619 N.W.2d 825 (2000).

## 2. JURY INSTRUCTION No. 9

The Breedens assign that the district court erred in several respects regarding instruction No. 9. We address but one such contention. Instruction No. 9 provided:

> This is an action based upon a claim of malpractice, sometimes called professional negligence. A statute of the State of Nebraska provides:
>
> "Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in this or in similar localities. In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of the health care provider in a particular community, the test shall be that which healthcare providers in the community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances."
>
> We are here concerned with a highly specialized field with which laymen cannot be expected to be familiar. Accordingly, the standard of care of the required skill and knowledge to be exercised must necessarily be established by expert witnesses who are learned in the field of medicine. You must not, therefore, arbitrarily set your own standards, but you should determine the standard of care or required skill and knowledge from the testimony of the expert witness[es] who testified in this case.
>
> The defendants in this case are health care providers under the terms of the foregoing statute.

Before discussing the merits of the Breedens' assigned errors with respect to instruction No. 9, we first address Anesthesia West's contention that the Breedens waived any objection to instruction No. 9 because they did not offer an alternative jury instruction. In support of this contention, Anesthesia West relies upon *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), and *State v. Al-Zubaidy*, 253 Neb. 357, 570 N.W.2d 713 (1997).

Appellants in both *Lotter* and *Al-Zubaidy* assigned as error the trial court's failure to give a requested jury instruction. In both cases, we did not consider the assigned error because appellant had failed to request that the trial court give the instruction in question. We held that "[a] party who does not request a desired jury instruction cannot complain on appeal about incomplete instructions." *Lotter*, 255 Neb. at 508, 586 N.W.2d at 628. Accord *Al-Zubaidy, supra.*

Neither *Lotter* nor *Al-Zubaidy* is applicable to the Breedens' assignments of error regarding instruction No. 9. Unlike *Lotter* and *Al-Zubaidy*, the Breedens have assigned as error an instruction given, rather than the court's failure to give a requested instruction. The record reflects that the Breedens timely objected to instruction No. 9 at the jury instruction conference. Such objection preserved the Breedens' objection to instruction No. 9 for purposes of this appeal. In order to appeal a jury instruction, an objection to the proposed instruction must be made at the trial level. *Suburban Air Freight v. Aust*, 262 Neb. 908, 636 N.W.2d 629 (2001); *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000). Therefore, contrary to Anesthesia West's contention, the Breedens' assignment of error regarding instruction No. 9 is properly before the court. We therefore consider one of the Breedens' contentions regarding instruction No. 9, which is likely to arise on retrial.

The Breedens contend that instruction No. 9, inter alia, erroneously required them to prove the applicable standard of care solely through expert testimony. Whether the jury instructions given by a trial court are correct is a question of law. *Malone v. American Bus. Info.*, 264 Neb. 127, 647 N.W.2d 569 (2002); *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002).

The portion of instruction No. 9 regarding the standard of care provided:

We are here concerned with a highly specialized field with which laymen cannot be expected to be familiar. Accordingly, the standard of care of the required skill and knowledge to be exercised must necessarily be established by expert witnesses who are learned in the field of medicine. You must not, therefore, arbitrarily set your own standards, but *you should determine the standard of care or required skill and knowledge from the testimony of the expert witness[es] who testified in this case.*

(Emphasis supplied.)

■ This portion of instruction No. 9 was an accurate statement of the longstanding rule that except in exceptional cases, each element of a claim of medical malpractice must be proved through expert testimony. See, *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000); *McLaughlin v. Hellbusch*, 256 Neb. 615, 591 N.W.2d 569 (1999). The Breedens argue, however, that with the adoption of the "learned treatise" exception to the hearsay rule, Neb. Rev. Stat. § 27-803(17) (Cum. Supp. 2002), an exception to the expert testimony requirement regarding proof of the standard of care should be recognized. The Breedens contend that instruction No. 9 in effect "instructed the jury to disregard the evidence contained in the 'Learned Treatises' since it was not the testimony of the expert witness." Brief for appellants at 40.

Under § 27-803,

[t]he following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(17) Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice, to the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination. If admitted, the statements may be read into evidence but may not be received as exhibits.

■ This court has not had occasion to construe § 27-803(17). Since § 27-803(17) is, however, substantially similar to Fed. R.

Evid. 803(18), we will look to federal decisions interpreting Fed. R. Evid. 803(18) for guidance in construing § 27-803(17). Where a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal decisions interpreting the corresponding federal rule for guidance in construing the Nebraska rule. *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). See, also, *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985), *abrogated on other grounds, State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996).

In *Tart v. McGann*, 697 F.2d 75, 78 (2d Cir. 1982), the court held that Fed. R. Evid. 803(18) permits the admission of learned treatises as substantive evidence " 'to the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination,' " and only "as long as it is established that such literature is authoritative." The court explained that while rule 803(18) permits the admission of learned treatises as substantive evidence, learned treatises are not admissible independently of expert testimony:

> Prior to the enactment of Rule 803(18), learned treatises were generally usable only on cross-examination, and then only for impeachment purposes. [Citation omitted.] Most commentators found the hearsay objections to learned treatise evidence unconvincing, and recommended that treatises be admitted as substantive evidence. Some commentators went so far as to suggest that treatises be admitted independently of an expert's testimony. [Citation omitted.] The Advisory Committee rejected this position, noting that a treatise might be "misunderstood and misapplied without expert assistance and supervision." . . . Accordingly, the Rule permits the admission of learned treatises as substantive evidence, but only when "an expert is on the stand and available to explain and assist in the application of the treatise . . . ."

*Tart*, 697 F.2d at 78 (quoting Fed. R. Evid. 803(18) advisory committee notes).

We find the reasoning of the Second Circuit in *Tart, supra*, persuasive. In the instant case, excerpts from each of three treatises were read by Dr. Fields during his direct examination testimony. Such excerpts, which were established as authoritative, provided

substantive evidence of the standard of care because Dr. Fields was " 'on the stand and available to explain and assist in the application of the treatise[s].' " See *Tart*, 697 F.2d at 78. The learned treatises, however, were a part of Dr. Fields' testimony, and as such, we find no merit in the Breedens' contention that the district court erred in instructing the jury to determine the standard of care "from the testimony of the expert witness[es] who testified in this case."

Additionally, we find no merit in the Breedens' contention that § 27-803(17) creates an exception to the expert testimony requirement in medical malpractice cases. Pursuant to § 27-803(17), learned treatises which have been established as a reliable authority are admissible into evidence only "to the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination." Thus, duly admitted learned treatises do not independently establish the standard of care in a medical malpractice action. They are merely evidence of the standard of care to the extent relied upon by the expert witness in direct examination, or called to the attention of the expert witness upon cross-examination. § 27-803(17); *Tart, supra.* See, also, *Morlino v. Medical Center*, 152 N.J. 563, 706 A.2d 721 (1998). But see *Wilson v. Knight*, 26 Kan. App. 2d 226, 229, 982 P.2d 400, 403 (1999) (noting that Kansas' learned treatise rule is "unique" since it permits "the admission into evidence of a medical treatise as independent substantive evidence" of the standard of care). The Breedens' assigned error is without merit.

### 3. REMAINING ASSIGNMENTS OF ERROR

Since our conclusion requires that we reverse, and remand this matter for a new trial, we find it unnecessary to further address the Breedens' arguments with respect to instruction No. 9 or their remaining assignments of error.

## VII. CROSS-APPEAL

Anesthesia West assigns on cross-appeal that the district court erred in ruling as a matter of law that the inconsistent statements made by Clark constituted changed testimony for the exigencies of trial pursuant to *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981). Anesthesia West further

assigns error in incorporating such pretrial ruling into jury instruction No. 5. Whether the jury instructions given by a trial court are correct is a question of law. *Malone v. American Bus. Info.*, 264 Neb. 127, 647 N.W.2d 569 (2002); *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002). When reviewing questions of law, an appellate court has an obligation to resolve the question independently of the conclusion reached by the trial court. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001).

Clark testified in her initial deposition that she entered the note describing Michael Breeden's "tingling" symptom into Breeden's electronic file at 9:50 a.m. on August 16, 1994, prior to Breeden's surgery. However, in her second deposition, Clark testified she might have entered the note later in the day after Breeden's surgery:

Q. [by Anesthesia West's counsel] [The notation of time on the nursing note is] not necessarily the moment that you're at the computer putting the note in; true?

A. Correct.

Q. And the computer doesn't print out a time which shows the moment that you were at the computer keyboard making the time entry; true?

A. Not to my knowledge.

Q. And you chart symptoms when you have the opportunity to do so; correct?

A. Yes.

Q. And sometimes you might chart it later in the day when you have the time, but you'll refer back to the time that the observation was made in the note; true?

A. There are times.

Q. That's — What you're supposed to do is list the time that something happened, as best you can estimate it or list it; true?

A. Yes.

Q. And that may be different than the time that you're actually at the keyboard; true?

A. There are times.

Prior to trial, the district court ruled, over Anesthesia West's objection, that under the rule enunciated in *Momsen, supra,*

Clark's "earlier deposition which indicates that the entry was made at a time on or before the day of surgery or the specific words of her own testimony will be the testimony at trial as a matter of law." Such determination was incorporated into jury instruction No. 5, which provided that "[t]he Court has determined as a matter of law that the following fact exists and you must accept it as true: Nurse Joyce Clark entered her nursing note on the computer at 9:50 a.m. on August 16, 1994."

In *Momsen*, a defendant doctor made statements during a pretrial deposition which in effect admitted his negligence. However, during trial, he testified to new facts which contradicted his earlier statements. On appeal, this court considered "whether, under the circumstances of this case, the [doctor's deposition] admissions bind him or simply go to the issue of his credibility." *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 53, 313 N.W.2d 208, 212 (1981). We determined that a party who changes his or her testimony during the course of litigation is bound by his or her earlier statements upon proof "that the testimony pertains to a vital point, that it is clearly apparent the party has made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony." *Id.* at 55, 313 N.W.2d at 213. See, also, *Neill v. Hemphill*, 258 Neb. 949, 607 N.W.2d 500 (2000). Accordingly, we held that the doctor was bound by his earlier deposition testimony, since the changed testimony concerned the central issue of the doctor's negligence, it was clear the doctor deliberately changed his testimony to meet the exigencies of the trial, and the doctor could not explain the change in his testimony. *Momsen, supra.*

This court has specifically declined to extend *Momsen, supra*, to instances of changed testimony by nonparty witnesses. *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996). A nonparty witness' changed testimony, even if made without reasonable explanation and in order to meet the exigencies of pending litigation, "is a factor to be considered by the jury when determining the weight and credibility to be given the witness' testimony." *Id.* at 295, 556 N.W.2d at 628. See, also, *State v. Osborn*, 241 Neb. 424, 490 N.W.2d 160 (1992); *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986). We again decline to extend *Momsen* to nonparty witnesses.

Since *Momsen, supra,* does not apply to nonparty witnesses, the district court erred in giving jury instruction No. 5.

## VIII. CONCLUSION

For the reasons stated herein, the matter is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.