Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

Jillyn M. Woodward, individually and as
Special Administrator of the Estate of Brian
K. Woodward, deceased, appellant, v. Saint
Francis Medical Center, doing business as
CHI Health St. Francis, et al., appellees.

___ N.W.3d ___

Filed May 31, 2024.    No. S-23-324.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a
   lower court's grant of summary judgment if the pleadings and admitted
   evidence show that there is no genuine issue as to any material facts or
   as to the ultimate inferences that may be drawn from the facts and that
   the moving party is entitled to judgment as a matter of law.
2. ____: ____. An appellate court reviews the district court's grant of sum-
   mary judgment de novo, viewing the record in the light most favorable
   to the nonmoving party and drawing all reasonable inferences in that
   party's favor.
3. **Witnesses: Testimony.** Where a nonparty witness testifies contrary to
   deposition testimony, any change in testimony is an issue of credibility
   for a fact finder to make, and that later testimony will normally not be
   struck by the trial court.

Appeal from the District Court for Hall County: Patrick M.
Lee, Judge. Reversed and remanded for further proceedings.

Thomas E. Johnson and Adam P. Johnson, of Johnson, Tabor
& Johnson Law, L.L.C., for appellant.

Cathy S. Trent-Vilim and Patrick G. Vipond, of Lamson,
Dugan & Murray, L.L.P., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Papik,
and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Brian K. Woodward and his wife, Jillyn M. Woodward (Jill), filed suit against Babak Favivar, Donald Kropf, Saint Francis Medical Center (Saint Francis), and The Physicians Network for injuries Brian allegedly sustained while he was receiving care at Saint Francis in Grand Island, Nebraska. The district court granted the doctors' and Saint Francis' motions for summary judgment. Jill appeals. We reverse, and remand for further proceedings.

## BACKGROUND

*Brian's Angioedema.*

Brian was brought to the emergency room (E.R.) at Saint Francis at approximately 5:30 a.m. on June 30, 2019. Brian, aged 52 years, complained that his tongue was swollen and that he was having difficulty swallowing.

Upon arrival at the E.R., Brian was evaluated. According to the deposition of his treating nurse, Brian was alert, oriented, able to sit up, and breathing normally, though his tongue and throat were exhibiting significant swelling. Defendant Favivar was the sole E.R. doctor on duty and was Brian's attending physician. Favivar concurs that Brian was alert and oriented upon his arrival at the E.R.

Brian was treated for angioedema, which is abnormal swelling of the tongue, mouth, and airway. Generally, there are two types of angioedema: bradykinin-mediated and histamine-mediated. Each is distinct and responds differently to medications.

Initially, Brian was given a regimen of epinephrine, steroids, and Benadryl, which is often successful in treating histamine-mediated angioedema. Brian did not respond to the regimen given. Angioedema can progress quickly, and in Brian's case, it became more and more difficult for him to breathe. The record shows that Favivar was aware from the outset of Brian's treatment that it might become necessary

to intubate or establish a surgical airway. That time came at approximately 6:15 a.m., when Favivar directed that the on-call anesthesiologist, Kropf, be notified that he was needed for an emergency intubation.

Kropf arrived at the hospital at 6:30 a.m. According to Brian's nurse, Brian was still alert, responsive, conversant, and breathing on his own when Kropf arrived. At 6:32 a.m., Brian was administered neuromuscular drugs paralyzing him in advance of the intubation. Kropf then attempted to intubate Brian but was unsuccessful due to the severity of the swelling. Kropf was unable to identify any anatomical landmarks and, even with the assistance of an endoscope, could see nothing beyond Brian's tongue. This attempt having failed, Favivar directed that an ear, nose, and throat physician (ENT) be called to establish a surgical airway (via either a tracheostomy or a cricothyrotomy).

While waiting for the ENT, Kropf made at least one additional unsuccessful attempt to intubate. It is not clear whether Favivar ever made his own attempt at intubation—his notes and the statement of a respiratory therapist who was present indicate he did, but Favivar testified via deposition that he did not.

The ENT arrived and, at about 6:55 a.m., administered lidocaine in preparation for the establishment of a surgical airway. Just after the arrival of the ENT, the medical director of the E.R., Dr. Matthew Treaster, also arrived. Treaster attempted and successfully completed intubation between 6:55 and 7 a.m. Brian was later life-flighted and admitted to a hospital in Omaha, Nebraska.

Two days later, Brian was extubated and weaned off sedatives and paralytics. At this time, it was noted that Brian was suffering from apparently new-onset, right-side semiparesis, including weakness and partial paralysis. Over the next few days, Brian was noted to have various "deficits," including cognitive issues, hemiparesis, and memory and language

issues. Brian returned to Saint Francis for both inpatient and outpatient rehabilitation treatment.

According to the record, Brian was in a wheelchair following these events until his death in April 2022. Brian did not return to work and was dependent on Jill for daily activities such as toileting, dressing, bathing, and eating, and he suffered from memory and speech issues, mobility limitations, and emotional issues. Jill does not claim that Brian's death was a result of the alleged medical malpractice.

*Litigation.*

Brian and Jill, and later Jill individually and in her capacity as the special administrator of Brian's estate, allege that Favivar and Kropf were negligent in their treatment of Brian by failing to appropriately manage his airways, causing a permanent anoxic brain injury, and further that Favivar and Kropf were agents of Saint Francis and that thus, Saint Francis was liable for Favivar's and Kropf's malpractice. In support of her claim of medical malpractice, Jill offered depositions from three experts: Adam Barkin, emergency room doctor (taken October 9, 2021); Morgan LaHolt, rehabilitation doctor specializing in brain injuries (taken February 23, 2022); and John Lundell, anesthesiologist (taken August 11, 2022).

The doctors and Saint Francis sought summary judgment on February 15, 2023. On February 28 and March 6, affidavits from LaHolt and Barkin were served on the defendants. The defendants subsequently filed motions to strike these affidavits.

Following a hearing held on the motions to strike and for summary judgment, the district court struck the affidavits, relying on *Momsen v. Nebraska Methodist Hospital*,[1] noting that the affidavits included "information that is materially different from the deposition each affiant provided. There is no

---

[1] *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981).

sufficient explanation for the change in testimony by either . . . Barkin or . . . LaHolt other than to meet the exigencies of litigation." The district court then granted the defendants' motions for summary judgment.

## ASSIGNMENTS OF ERROR

Jill assigns that the district court erred in (1) striking the supplemental affidavits of LaHolt and Barkin, (2) ruling that there was no genuine issue of material fact as to the proximate cause of Brian's injuries, (3) determining as a matter of law that Favivar and Kropf were independent contractors and not ostensible agents or common-law employees of Saint Francis, and (4) finding no issues of material fact and that Saint Francis was entitled to judgment as a matter of law.

## STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[3]

## ANALYSIS

*Striking of Affidavits Under* Momsen.

On appeal, Jill assigns that the district court erred in striking LaHolt's and Barkin's affidavits based on *Momsen*.[4] We agree.

In *Momsen*, this court affirmed the striking of the defendant doctor's testimony at trial, where that testimony was

---

[2] *Griffith v. LG Chem America*, 315 Neb. 892, 1 N.W.3d 899 (2024).

[3] *Id*.

[4] *Momsen, supra* note 1.

contrary to earlier deposition testimony. In so doing, we concluded that the change in testimony was made to meet the exigencies of the pending litigation.

[3] But since our decision in *Momsen*, we have been unwilling to extend that holding to situations involving the testimony of nonparty witnesses.[5] In the instance of a nonparty witness, rather than striking that testimony, this court has held that any change in testimony is an issue of credibility for a fact finder to make.

The defendants suggest that the refusal to extend *Momsen* to nonparty witnesses would be "understandable" in a trial setting: "the case is already being tried to a factfinder, whose duties include making credibility determinations, and the conflicting testimony can be used to impeach the witness and place the witness's credibility directly at issue for the factfinder to resolve."[6] However, the defendants argue that "rationale . . . does not apply to summary judgments proceedings [like this one], where credibility determinations are prohibited."[7]

As we determined in *Choice Homes v. Donner*[8]—also an appeal following a grant of summary judgment—we decline the invitation to extend *Momsen* to apply to nonparty witness testimony. Accordingly, we reverse the district court's granting of the defendants' motion to strike.

We observe that several other arguments were made by the defendants in support of striking the affidavits, including a contention that the striking of the affidavits was permissible either due to Jill's failure to abide by the progression order[9]

---

[5] See, *Choice Homes v. Donner*, 311 Neb. 835, 976 N.W.2d 187 (2022); *Breeden v. Anesthesia West*, 265 Neb. 356, 656 N.W.2d 913 (2003).

[6] Brief for appellees at 22.

[7] *Id*. at 23.

[8] *Donner, supra* note 5.

[9] *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017).

or as a sanction for a discovery violation.[10] Because the district court did not make any determinations based on those other grounds, and these other grounds require the district court to exercise its discretion, we reverse the district court's determination that the affidavits should be stricken under *Momsen*, and we remand the cause for further proceedings and to consider the alternate grounds raised. We therefore find merit to Jill's first assignment of error.

*Remaining Assignments of Error.*

Because we conclude that the district court erred in striking Barkin's and LaHolt's affidavits, we do not reach Jill's assertion—raised in her second assignment of error—that summary judgment should have been denied based on causation. Causation cannot be considered until the district court has considered the other grounds for striking these affidavits.

Likewise, we do not reach Jill's assignment of error relating to Saint Francis' liability. In her complaint, Jill asserted that Favivar and Kropf were ostensible or common-law agents of Saint Francis and that Saint Francis was liable for their malpractice under an agency theory. Apparent or ostensible authority "'may be conferred if the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the apparent authority.'"[11]

Saint Francis moved for summary judgment, asserting that Favivar and Kropf were not employed by Saint Francis but were instead independent contractors employed by The Physicians Network and asserting that Favivar's and Kropf's actions were not the cause of Brian's alleged injuries. Saint Francis further argued that there was no other allegation or

---

[10] *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987).

[11] *Double K, Inc. v. Scottsdale Ins. Co.*, 245 Neb. 712, 719, 515 N.W.2d 416, 421 (1994).

evidence supporting any allegations of malpractice against any Saint Francis employees.

We do not reach Jill's assignment of error relating to agency, because the basis of the district court's granting of summary judgment in Saint Francis' favor is not totally clear from the record. The court's order finds no genuine issue of material fact as to the agency question, but also states that "[e]ven if a genuine issue of material fact *was* created by the allegations of [Jill] of ostensible or apparent[] agency of emergency room doctors . . . as addressed below, the ultimate result [of] this case would be the same regarding these combined motions for summary judgment."

To the extent the district court concluded that there was an issue of material fact, the court found that its decision on causation was dispositive. But we have since reversed that decision on causation and remanded the cause for further proceedings. Thus, to the extent there was an issue of material fact, remand is likewise appropriate.

To the extent the district court found no genuine issue of material fact, we observe that it is not entirely clear from the record what evidence the district court considered in reaching that conclusion. We note the presence of a document entitled "Conditions of Admissions" in which Jill consented to Brian's treatment. While that form indicated that "not all" doctors providing treatment "are employees or agents of the [h]ospital," such language suggests that some of the doctors are employees or agents of the hospital. It equally provides that the admitting and treating physician "may or may not be employed by the [h]ospital." On its own, this document does not show that there is no genuine issue as to whether the doctors had apparent or ostensible authority from Saint Francis.

As such, we also reverse that portion of the district court's order that could be read as granting Saint Francis' motion for summary judgment on the issue of agency, and remand the cause for further proceedings.

## CONCLUSION

The decision of the district court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded for
further proceedings.

Funke, J., not participating.